[Civ. No. 607. Second Appellate District.—March 5, 1909.]

UNITED INVESTMENT COMPANY, a Corporation, Appellant, v. LOS ANGELES INTERURBAN RAILWAY COMPANY, a Corporation, E. H. LAHEE et al., Respondents.

RESCISSION FOR FRAUD—DEEDS IN ESCROW—RIGHT OF WAY FOR RAILROAD—CONCLUSIVENESS OF FINDING AGAINST PLAINTIFF—CONFLICTING EVIDENCE.—In an action to rescind deeds of a right of way for an electric interurban railway company deposited in escrow by plaintiff's predecessor, for alleged false and fraudulent representations, inducing such escrow without compensation, when the evidence was conflicting as to whether any false representations were made, the finding of the court against the plaintiff thereupon is conclusive upon the appellate court.

ID.—APPEAL UNDER "ALTERNATIVE METHOD"—RULES OF DECISION NOT CHANGED.—The amplified opportunity afforded by the complete detailed statement of the evidence and proceedings at the trial which is furnished by the record under the "alternative method" of appeal, provided for in sections 941b, 953a, 953b, and 953c of the Code of Civil Procedure, does not change the rules of decision which place with the trial court or jury the determination of the credibility of the witnesses, and the weight to be given to their testimony, including the selection of one of several inferences that may be drawn from the evidence, and which shall be made the basis

of the judgment of the court, and the determination of what con
flicting testimony is true.

ID.—CONSIDERATION FOR ESCROW—ENHANCEMENT OF VALUES—SUPPORT
OF FINDING.—The enhancement of values in the vicinity by reason
of the construction of the road, found by the court to be the con-
sideration for the giving of the right of way, which was a proper in-
ference from the testimony in the case, sufficiently establishes a con-
sideration for the escrow, and that plaintiff was not damaged by
the construction of the railroad over the right of way granted.

ID.—NAME OF PROMISEE—ESCROW FOR CONSTRUCTION OF ROAD—IMMA-
TERIAL QUESTION—PLEADINGS—REPRESENTATIONS.—It is immate-
rial, and cannot justify a reversal of the judgment, that the
original verbal promise of the right of way was made to a company
which did not build the road, the escrow deeds having been made
to the defendant, which did construct it, and it being clear that
it was the intention of the donor to give the right of way to any
company which should construct the road, regardless of its name.
It was too late after the escrow deeds to question the name of the
promisee, especially where no such question is raised by the plead-
ings, and the representations alleged did not specify any particular
company.

ID.—EVIDENCE—TRUTH OF REPRESENTATIONS MADE.—The court properly
overruled the objections of the appellant to the introduction of the
evidence of the defendant charged with the making of the false
representations to establish the truth of the representations made
that the donor had promised to give a free right of way through his
lands, based upon the theory that the only representations before
the court were such as related to the agreement in writing.

'APPEAL from a judgment of the Superior Court of Los
Angeles County. Curtis D. Wilbur, Judge.

The facts are stated in the opinion of the court.

Stephens & Stephens, and D. K. Trask, for Appellant.

Gibson, Trask, Dunn & Crutcher, and E. E. Bacon, for
Respondents.

TAGGART, J.—This action was brought to enjoin the de-
livery of three deeds of right of way deposited in escrow by
the plaintiff, to rescind the escrow and for the return of the
deeds, upon the ground that the execution and deposit of the
deeds were procured by false and fraudulent representations
made by one of the defendants. The condition of the escrow

was the construction of a railroad from the city of Los Angeles to the city of Covina over the right of way conveyed by said deeds.

The misrepresentations as alleged in the original complaint were: (1) That the defendant Lahee had represented to A. W. Rhodes, the secretary and manager of the plaintiff, that C. H. Ruddock, the predecessor in title of plaintiff, and the owner of more than forty per cent of the stock of that corporation, had agreed to give the strip of land, covered by said deeds, for railroad purposes without any compensation therefor, whereas, in fact, Ruddock had agreed to give the right of way upon condition that he be paid the sum of $2,157.50, and that Lahee knew this fact and concealed it from Rhodes, to whom it was unknown at the time of the making of the deeds; (2) that Rhodes, on behalf of plaintiff, informed Lahee that plaintiff would not execute or deliver the deeds mentioned unless plaintiff could acquire a certain thirty-foot strip of land across the southern boundary of two lots designated as lots 33 and 34, and the railroad company would enter into an agreement to keep the watercourse on the north side of the right of way so that it could not cut a channel through a certain lot which plaintiff had agreed to sell to third persons; that plaintiff procured an agreement from the owners of the thirty-foot strip to sell the same to him, but that some of the other defendants and the railroad company, for the purpose of preventing plaintiff obtaining title thereto, procured and caused a conveyance of said strip to be made to the said railroad company; (3) that at the time of the delivery of said deeds it was represented to plaintiff by the committee who were to secure a right of way for the road (of which the individual defendants were members), that the railroad had acquired all the rights of way necessary to the construction of the railroad except those mentioned in the said deeds, and that the railroad would begin construction of its system of railroad along said line within twenty days after April 24, 1906. All of which representations are alleged to be untrue and to have been the reasons moving plaintiff to execute and deliver the deeds to the First National Bank as stated, and without said representations having been made the deeds would not have been so deposited, etc.

10 Cal. App.—12

By a supplemental complaint it is alleged that after the commencement of the action the railroad defendant entered upon the lands described in the deeds and constructed its railroad thereon, and in so doing destroyed a reservoir and injured other improvements of plaintiff on the strip of land to the damage of plaintiff in the sum of $8,000. While purporting to state only a supplemental cause of action, by this pleading some of the allegations of the original complaint are amended somewhat; for instance, the one relating to the first misrepresentation is restated so as to allege that the representation of Lahee as to the agreement of Ruddock to give the right of way was that Ruddock "had agreed *in writing* to give said strip of land" (the words "in writing" not appearing in the original complaint), and the allegations as to plaintiff acquiring the thirty-foot strip of land are more fully set forth. The prayer of the supplemental complaint is for the rescission of the escrow, for the return of the deeds and for damages for the trespass.

Judgment was for defendants and plaintiff appealed from the judgment, served the notice required by section 941b, and the record was certified up in accordance with the provisions of sections 953a, 953b, 953c. A reversal of the judgment is asked upon the grounds of the insufficiency of the evidence to justify the findings, and because of certain specified errors of law occurring during the trial and excepted to by the plaintiff.

In respect to the facts constituting the alleged misrepresentation, the trial court found that Ruddock did agree to give the right of way free of charge, but not in writing, and that Lahee did not represent to Rhodes that such an agreement was in writing, but that it was made verbally, and as so made was true. That the committee did not agree to give Ruddock $2,157.50, or any other sum, in compensation for said strip of land, but that the enhancement in value of the other lands and premises of Ruddock and plaintiff by the building of the road was the consideration to Ruddock for the agreement; that the acquiring of said thirty-foot strip of land by plaintiff for drainage purposes, or the keeping of the surface water on the north side of the railway by the railroad company, or the commencement of work within twenty days, or that all the right of way other than the portion described

in the deed had already been acquired, were not conditions of the delivery of the deeds of conveyance by plaintiff, but that the only condition was that the said railroad should be built between the two cities named, over the strip of land described in the said deeds.

The amplified opportunity afforded by the complete detailed statement of the evidence and proceedings at the trial which is furnished by the record under the ''Alternative Method'' of appeal, which is here employed, to present to an appellate court the varied shadings of opinion and inferences that may be drawn from the evidence, may well suggest that the rule as to the conclusiveness of the findings of fact by the trial court should be somewhat modified. We cannot help thinking that appellant rests its hope of a reversal of the judgment largely upon this view. However tempting the opportunity to consider such a change may be to counsel for a party appealing from a judgment, from the standpoint of an appellate court no good reason is apparent why the change of method should affect a rule so well grounded as the one which places with the trial court or jury the determination of the credibility of the witnesses and the weight to be given their testimony, including the selection of one of several reasonable inferences that may be drawn from the evidence shall be made the basis of the judgment of the court. It is true appellant in presenting its specifications of insufficiency of the evidence to sustain the findings disclaims any intention of presenting such an argument and may be unconscious of having done so.

The evidence discloses that for some time prior to the year 1903, the people of Covina and vicinity had been seeking to induce persons interested in electric railways to construct a line of electric road from Los Angeles to Covina, or to extend some of the lines running out of Los Angeles toward Covina to that place, and in the spring of that year a committee of thirteen persons, of which the defendant Lahee was chairman, on behalf of the people of Covina, with this end in view, entered into negotiations with persons representing the Huntington interests, which then operated such a road as far as San Gabriel, with the result that the latter agreed to construct such a road if the right of way therefor could be had without cost to the constructors. The committee undertook

to procure this right of way, and its members and agents canvassed the property owners through whose lands the right of way was expected to run, obtained contracts to convey the necessary strip of land from such as it could, and ascertained the amount of damages to which each would be entitled according to an estimate made by the committee after considering the valuations put upon their properties by the respective property owners, and also the values at which the committee itself thought the property ought to be sold to the committee for the purpose. A theoretical assessment district was then created for the purpose of determining the benefits which would be derived from the building of the road by the various residents within the radius of its influence, the benefits were fixed and subscriptions in accordance therewith solicited. As usual in such cases, the aggregate of the valuations of right of way exceeded the subscriptions, and it became necessary to scale the former and swell the latter, or to try to do so; the former being more easily accomplished. The active work of the committee at this time covered but a short time, say, two or three months, beginning in January, 1903, and the contracts obtained were "placed in escrow" with the First National Bank of Covina, until the lands were required for construction of the road, when, upon receipt of the amount agreed upon by the committee, the deeds of the right of way were to be made to the Pacific Electric Railway Company, such deeds to be delivered when the road was completed. A list of the values estimated by the committee and of the amounts subscribed were also left with the bank.

During this time the land affected by the deeds here in question was owned by C. H. Ruddock, his mother and sisters, and was under the management of Ruddock, and the amount ascertained as a proper compensation for this and other lands owned or controlled by Ruddock as disclosed by the list was $3,369. The record discloses that Ruddock Company, by C. H. Ruddock, on March 5, 1903, signed two contracts in the form used by the committee, agreeing to convey two strips of land for the right of way for a road made necessary by the construction of the railroad. That he also gave two promissory notes for the sums of $3,097.75 and $2,377.50, signed "Ruddock & Co., by C. H. Ruddock," and dated respectively on March 25, 1903, and April 28, 1903, as

subscriptions toward paying for a right of way for the road. Ruddock was one of the active members of the committee and president of the bank in which the contracts were deposited at this time; and on March 28, 1903, he, his mother and sisters conveyed the lands affected by the deeds here under consideration to the plaintiff, the United Investment Company, a corporation, of which Ruddock owned and still owns one-half of the capital stock, and of which corporation A. W. Rhodes was the secretary and manager and owner of the larger portion of the remainder of the capital stock.

In April, 1906, defendant Lahee, as chairman of the committee, called upon Mr. Rhodes to make deeds for the right of way over the lands described in the deeds under consideration, and presented certain deeds to him for signature by him as manager of the plaintiff. Rhodes did not sign the deeds presented, but after some negotiations with the committee and the representatives of the defendant railroad company he executed and delivered to the First National Bank of Covina the deeds here in question, the same to be delivered to the defendant railroad company when the road was constructed.

The only direct evidence as to the first alleged misrepresentations made by Lahee to Rhodes is found in the testimony of these two gentlemen themselves. Rhodes says Lahee "stated that Mr. Ruddock had, in writing, agreed to give the right of way free several years· ago, . . . and he had the agreement in the First National Bank at Covina." This was on March 14, 1906, in Los Angeles, after Ruddock had written a letter from Los Angeles under date of February 27, 1906, to the members of the committee, in response to a letter written by them to him dated January 2, 1906, in which he referred them to Mr. Rhodes as being in charge of all business of the United Investment Company. On April 4, 1906, Mr. Rhodes was in Covina, at which time he asked Mr. Lahee if he would "get this agreement that Mr. Ruddock had given for this right of way." He said he would, but the bank was closed. When the deeds were executed, "I asked him . . . where the contract was of Mr. Ruddock, wherein he stated he would give them a free right of way, and he said he forgot to bring it in, but he said it is there just as I told you it was."

It is urged by appellant that the testimony of Mr. Lahee is not in conflict with that of Rhodes in respect to Mr. Ruddock having entered into an agreement *in writing* to convey the right of way described in the deeds. As quoted in appellant's brief, Lahee's testimony is. as follows (in respect to the conversation on March 14, 1906, in Los Angeles) : "Q. Did you, during such conversation, state to Mr. Rhodes that Mr. Ruddock had in writing agreed to give this right of way free several years before? A. I said that he had agreed to give the right of way. Q. (By Mr. Crutcher.) Did you say that such agreement was in writing? A. I said that we had contracts with Mr. Ruddock. Q. Now, state exactly what you did say. A. Mr. Rhodes asked me what those contracts were. I told him that I hadn't the contracts, I couldn't tell what property they covered, but the contracts were in the bank, and that we would find them and look at them and see what property they covered. Q. Did you tell him what bank? A. The First National Bank of Covina."

In respect to going to the bank with Mr. Rhodes the witness Lahee testified on cross-examination: "Q. What did you go to the bank for? A. To find the contracts, Mr. Ruddock's. Q. What did Mr. Rhodes say he wanted? A. He said he wanted to see the contracts. Q. What did you tell him the contract said? A. I didn't tell him. Q. You didn't tell him anything about the contents of the contract? A. No, sir. Q. Not a word? A. No. The contract was with reference to the right of way; of course that was understood. Q. Answer my question. What did you tell him, if you told him anything? A. I don't know as I told him anything. Q. Will you say whether or not you did tell him anything about the contents of those contracts? A. I couldn't recall the contents of those contracts. I had no recollection of it. I didn't have charge of those contracts, or any of the papers at all. Q. You have not answered my question. What did you tell him? A. I didn't tell him anything."

Again, on his cross-examination Lahee says: "Q. About Ruddock's agreement being in writing. What is your testimony about that? What did you say to Rhodes, and what did he say to you? A. Well, he asked me, I think, if we had written contracts. I told him that we had. Covering how

much of the property I couldn't tell.   Q.   Did you say that
to him?   A.   Yes, sir.   That is my recollection of it, because
I didn't know how much—what the contracts covered.   The
contracts were never in my possession.   I knew that he had
a bunch of contracts.   I didn't know how many, or what they
were, until afterward.   Q.   Now, state whether you said to
Mr. Rhodes that Mr. Ruddock had agreed in writing to give
this right of way that you were asking the United Investment
Company to deed to the railroad company?   A.   I did not
say that he had agreed in writing to give it.   Q.   State
exactly what you did say.   A.   I said that he had agreed to
give a free right of way.   Q.   That is all you said about it?
A.   That is my recollection of it, sir.   Q.   Nothing was said
about any writing?   A.   No more than the contracts, as just
stated.   Q.   What was said about that?   A.   As I said be-
fore, that we had contracts.   I couldn't tell covering what
property, nor how many."

We are of the opinion that the statements of these two
gentlemen in respect to whether or not there was any repre-
sentations made that Ruddock agreed "in writing" to give
the right of way are clearly inconsistent and called for a
determination by the trial court of which was true.   The in-
consistency becomes more apparent when an attempt is made
to find evidence to support the truth of the representation
made by Lahee.   The oral or verbal agreement of Ruddock
to give the right of way free is testified to by several other
members of the committee and the two written contracts in
evidence corroborate what he said as to having written con-
tracts, but there is no evidence to establish the truth of the
statement as Mr. Rhodes says Lahee made it to him, to wit,
that Ruddock agreed *in writing* to convey the right of way
which was described in the deeds which plaintiff placed in
escrow.   We are unable to see how a statement in relation to
a particular matter which the evidence shows to be true can
be held to be the same, or consistent with, that which it shows
to be false, and we are forced to the conclusion that there was
a conflict between the statements of the two witnesses so sub-
stantial that this court is bound to accept the finding of the
trial court in respect thereto.   That Lahee did not testify
that Ruddock "verbally" agreed to give the right of way
does not materially lessen the apparent support of the find-

ing of the trial court to that effect. Not being made in writing, the court was justified in finding it was verbal.

The question of the alleged concealment by Lahee from Rhodes of the fact that the promissory notes had been given by Ruddock is not material here, and is only an incident in the transaction. It was not made a part of the false representations relied upon by plaintiff in making the deeds by either its original or supplemental complaint; and Mr. Lahee's failure to mention it might very properly be attributed to a supposition that Rhodes knew about this, as Ruddock had written to the committee that Rhodes was in full control of these matters. Without going into the detail of the testimony, we are of opinion that there is sufficient evidence to sustain the findings of the trial court in relation to the strip across lots 33 and 34. There is evidence showing that Mr. Rhodes made inquiries of the engineers of the road in respect to this matter, and was informed of the situation before he delivered the deeds. It also appears that the purpose for which he alleges this strip was desired has been substantially accomplished by the railway company's construction. There is also evidence to sustain the court's finding that the delivery of the deeds was not conditioned upon the commencement of the work in twenty days, or that all the rest of the right of way had been acquired.

The enhancement of values in the vicinity by reason of the construction of the road found by the court to be the consideration for Mr. Ruddock's giving the right of way was a proper inference from the testimony in the case, and is a sufficient finding of a consideration for the deeds made by plaintiff, if such finding were necessary after the finding that Ruddock had agreed to make the deeds without consideration, and that the deeds were executed and delivered in pursuance of that agreement. For the same reason the finding of the court that plaintiff was not damaged by the entry of the railroad company to construct the road should be sustained.

The objection urged that the finding that the promise made by Ruddock to give the free right of way was for the purpose of the construction of a railroad by the corporation defendant, the Los Angeles Interurban Railway Company, while the evidence is that the contracts provided for a deed to the Pa-

cific Electric Company and the notes given by Ruddock recited the latter company as the one which was expected to extend the road to Covina, if it should be considered at all, is not sufficiently material to justify a reversal of the judgment. No such issue is presented by the pleadings, and the representation as to the promise made by Ruddock did not specify any particular company. If it may not be inferred from the acts of the parties that the indefinite statement as to the free right of way promised by Ruddock implied or was understood to be given to the defendant company, it is clear that the gift of the right of way was to be made to the constructing company, whatever the name of the corporation. The defendant company became such, and plaintiff made its deed to that company, and it is now too late to raise this question. Accepting either construction of the promise of Ruddock, it sustains the finding.

The overruling of the objections of appellant to the introduction of the testimony to establish the truth of the representations of Lahee that Ruddock had promised to give a free right of way through his lands, predicated upon the theory that the only representations in this respect before the court were such as related to such an agreement in writing, was proper.

We see no prejudicial error in the record.

Judgment affirmed.

Allen, P. J., and Shaw, J., concurred.